**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLENTOWN VICTORY CHURCH ) <br> a Pennsylvania not for profit corporation ) <br> ) <br> ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF ALLENTOWN, PENNSYLVANIA, ) <br> a Pennsylvania municipal corporation, ) <br> ) <br> and ) <br> ) <br> ZONING HEARING BOARD OF THE ) <br> CITY OF ALLENTOWN, PENNSYLVANIA ) <br> ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. |

**COMPLAINT AND DEMAND FOR JURY TRIAL
(DAMAGES AND INJUNCTIVE RELIEF REQUESTED)**

**<u>PRELIMINARY STATEMENT</u>**

This case presents the familiar conflict between the legal principle of non- discrimination and the political principle of not-in-my-back yard ("NIMBY"). The Plaintiff, Allentown Victory Church, a religious, faith-based organization, seeks a declaratory judgment, temporary and permanent injunctive relief, and damages for discrimination in zoning on the basis of a handicap or disability. The Defendants have engaged in a pattern and practice of conduct with the intent, purpose, and/or effect of discriminating against persons with handicaps or disabilities. This discrimination has been carried out through the use of, amongst other things, a policy of

1

exclusionary zoning from a residential zone for housing for persons with disabilities; a refusal to provide a reasonable accommodation to waive that exclusion; an arbitrary interpretation of zoning laws and, even if not arbitrary, unreasonably restrictive zoning policies; and a refusal to hear Plaintiffs' Fair Housing Act claims; all of which have denied Plaintiffs' the opportunity to provide housing to persons with disabilities. Defendants' conduct has threatened to deprive Plaintiffs' proposed handicapped and disabled residents the benefit of independent housing opportunities of which they are in need. This action arises under the Fair Housing Act of 1968 ("FHA"), as amended, 42 U.S.C. §3601, et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. §1213, et seq., and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc(a)(l).

## I.   JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§§ Sections 1331, 1343, 42 U.S.C. § 3613, and 42 U.S.C. §12133.

2.    Venue is proper in the United States District Court for the Eastern District of Pennsylvania as all acts complained of occurred within this District.

## II.   PARTIES

3.    Allentown Victory Church ("AVC") is a Pennsylvania not-for-profit corporation with its principal place of business located in Allentown, Pennsylvania. One of the missions of AVC is to minister to those individuals with alcohol and substance abuse issues.  AVC fulfills this mission by providing a faith based, sober living program located at 1447 West Hamilton Street, Allentown, Pennsylvania.

4.    The City of Allentown ("City") is a Pennsylvania municipal corporation.  The City is responsible for the acts of its agents and employees, including enactment and enforcement of its

zoning code. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. §12131. For purposes of RLUIPA, the City constitutes a "government". 42 U.S.C. §§ 2000cc-5( 4)(A)(i), (ii).

5.     The City of Allentown, Pennsylvania Zoning Hearing Board ("ZHB") is responsible for the interpretation of the Borough's zoning code.  It hears and decides all applications for special use permits and variances that seek exceptions and waivers of the City's zoning code. The ZHB is a public entity under the Americans with Disabilities Act, 42 U.S.C. §12131. For purposes of RLUIPA, the ZHB constitutes a "government". 42 U.S.C. §§ 2000cc-5( 4)(A)(i), (ii).

### III.     STATUTORY AND REGULATORY FRAMEWORK

6.     In 1988, Congress amended the Fair Housing Act, 42 U.S.C. Section 3601 et seq., to extend the guarantee of fair housing to handicapped individuals.  Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the Fair Housing Act, 42 U.S.C. Section 3614a.

7.     Under the Fair Housing Act, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. Section 3602(h).  The term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance)." 24 C.F.R. Section 100.201.

8.     Under the Fair Housing Act, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer,

renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available.  42 U.S.C. Section 3604(f)(1).

9.     The Fair Housing Act further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of  the  handicap of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made available.  42 U.S.C. Section 3604(f)(2).

10.     The federal regulations implementing the Fair Housing Act specifically prohibit, as a discriminatory activity, providing municipal services differently because of handicap.  24 C.F.R. 100.70 (d)(4).

11.     The federal regulations implementing the Fair Housing Act further make it unlawful, because of  handicap, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development." 24 C.F.R. Section 100.70(a).

12.     The American with Disabilities Act requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. Section 12132.

13.     The federal regulations implementing the Americans with Disabilities Act prohibit a public entity from administering a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity

establish requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability.  28 C.F.R. Section 35.130(6).

14.     The federal regulations implementing the Americans With Disabilities Act also make it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination.   28 C.F.R. Section 35.130(4)(I).

### IV.     STATEMENT OF FACTS

**A.     ALLENTOWN VICTORY CHURCH'S MISSION TO MINISTER TO INDIVIDUALS WITH ALCOHOLISM AND SUBSTANCE ABUSERS**

15.     The mission of AVC is to minister to the disadvantaged in the Allentown area.

16.     Among the missions of AVC is to provide a faith based sober housing to recovering alcoholics and substance abusers.  It accomplishes this mission through its Recovery Victory Home ("RVH"),

17.     AVC created the RVH because it saw a need to provide a Christ Centered housing program for men coming out of jail or a substance abuse treatment facility. AVC saw a gap, a problem, and an unmet need in the community. When men were discharged from incarceration or addiction treatment, AVC saw too many of them disconnected from God, a spiritual, faith-based community, unable to associate with safe, supportive people, resulting in ending up back where they started:  returning to jail or addiction treatment. There were not enough good transitional housing programs, especially that were Christ Centered, supporting re-entry of these men after being successfully discharged from a rehabilitation program,

18.     All the individuals who participate in the RVH program and reside in the recovery house located at 1447 Hamilton Street in the City of Allentown, Pennsylvania are individuals who

are disabled by virtue of their alcohol or chemical dependency combined with their completion of a substance abuse treatment program.

19.     The purpose of the RVH program is to develop and support a meaningful relationship with God and the Residential Community, the basic skills necessary for a genuine recovery experience, and a Christ centered perspective.

20.     RVH does not provide a substance abuse treatment program. There is no counseling or therapy offered to the residents.

21.     The residents of RVH voluntarily and freely choose to participate in the program and reside at 1447 Hamilton Street.   Residents of RVH live together as a family and make group decisions on a collaborative basis based on democratic procedures.   The dwelling is used as a single-family home with similar support and collaborative functions.   The residents of the RVH house relate to each other as the functional equivalent of a single family.

22.     All residents of RVH have access to the entire house, all of the household facilities, and function together as a single housekeeping unit.   There are not any special locks on the doors of the bedrooms or other rooms in the home.   The residents share all household responsibilities and live together to create a "family" atmosphere, where all aspects of domestic life are shared by all the residents.

23.     RVH is not a substance abuse treatment center, halfway house, shelter, or a community care facility.   There is no treatment, counseling, therapy, or any type of health care services provided at RVH.   RVH is not licensed by the Commonwealth of Pennsylvania nor is it required to be licensed.   There are no institutional personnel involved in the supervision or management of the RVH. Allentown Victory Church does not provide a behavioral health or treatment program,  nor does it provide treatment services of any kind for RVH residents.

24.     The RVH sober living program is between nine (9) to twelve (12) months.

25.     RVH provides a peer-driven sober living environment designed to increase self-responsibility and support for persons in recovery.  The RVH house provides a supportive atmosphere that is designed to increase self-responsibility and support for persons in recovery from alcoholism and substance abuse.  There is no counseling, or therapy offered to the residents.

26.     The RVH program provides the resident an opportunity to progress through several levels.  Each level affords the resident with additional responsibilities and privileges.

27.     Level One is a probationary level.  In order to advance to Level Two, the resident is required to adhere to the following programmatic steps:  follow all policies as outlined in the policies and procedures manual; make weekly housing payments; attend at least three (3) approved Bible Studies/Church Services/Prayer meetings a week; attend Sunday services at Allentown Victory Church; attend at least four (4) 12 Step Meetings (Alcoholics or Narcotics Anonymous meetings) with an approved 12 Step sponsor; if not employed, perform a daily job search; must obtain a Certified Recovery Specialist and meet with the specialist at least once a week; weekly meetings with House manager to review goals and complete weekly resident goal sheet; perform a minimum of one (1) hour of community service each week; take random drug screening test; required to do house chores and keep room neat and tidy; all residents are expected to participate in devotions either in a group or on a Bible phone application connected with the House Manager.

28.     Level Two status is less restrictive than Level One.  It incorporates many of the same requirements as Level One including the requirements of a minimum of three (3) Christian Bible Studies, Church services or Prayer meetings per week; participation in a minimum of three (3) 12 Step program meetings per week; must become a "House Buddy" and demonstrate a recovery-oriented lifestyle; take weekly random drug tests; and participate in devotions.

29.     Level Three status is known as "Senior Status."   The purpose of Level Three is to demonstrate Independent Living Skills developed during Level 1 and 2 within the residential community and the community at large, and demonstrate solid leadership skills in the residential community.   An individual with Senior Status does not require community supervision, but is subject to a 12 a.m. curfew.  A Level Three resident is expected to abide by the conditions of Level I and 2 participants.  A resident who has attained Senior Status is eligible to apply to be an Assistant House Manager.  This is the last step before the resident can return to independent living.

**B.     ALLENTOWN VICTORY CHURCH USE OF 1447 HAMILTON STREET AS A SOBER LIVING FACILITY**

30.     On or about September 17, 2018, Plaintiff leased the premises located at 1447 Hamilton Street.  The Plaintiff did not take possession of the premises until February 2019.

31.     The 1447 Hamilton Street dwelling consists of ten bedrooms with seven bathrooms, of which three are full bathrooms; two kitchens, one on the first floor and a larger one on the second floor; square footage is approximately 4,500 square feet and is contained within three floor levels.

32.     AVC intended to use the premises for a maximum of 18 individuals in recovery from alcoholism and substance use disorder residing in a faith based, Christian oriented recovery program.

33.     On or about April 12, 2019, the City sent a zoning violation notice to Rocky & Sons, Inc., the property owner of 1447 Hamilton Street, which stated it had received information that a Drug and Alcohol Rehabilitation Facility was being operated at the property without first obtaining the required zoning approval or permits.   The notice also advised that 1447 Hamilton

Street is located in the R-H (High Density) Zoning District and that a special exception is required to operate a Drug and Alcohol Rehabilitation Facility.

34.      Shortly after Rocky & Sons, Inc. received the violation notice, AVC submitted a zoning application to the City to operate a Drug and Alcohol Rehabilitation Facility.

35.      On or about April 12, 2019, Tabitha Tingle, the City's zoning clerk, sent a letter to Monacacy Property Management denying the zoning application.  The denial letter stated, "This is to inform you that your zoning application to maintain drug and alcohol rehabilitation facility for up to 18 clients . . . has been DENIED." (caps in original).

## C.      THE CITY'S ZONING CODE

36.      The City's zoning code governs zoning and land use policy in the City.

37.      1447 Hamilton is located in a residential area that is zoned R-H High Density Residential District. This district's development is denser and more intense, and is located typically, though not exclusively, in Allentown's center city. The  purpose of the High Density Residential District is to provide areas of high density appropriate for the development of high rise residential and nonresidential structures with controls necessary for insuring development remains compatible with other uses permitted in this district.

38.      Permitted uses in the R-H High Density Residential District are single family homes, two family homes, twin dwellings with a new dwelling unit located on its own lot; one or more Apartment/Multi-Family Dwelling Units within a Building that includes a principal non-residential use; Multi-Family Dwellings (other than residential conversions); roomers and boarders; and rowhouses and townhouses.

39.     Allowed as special exceptions in the R-H High Density Residential District are both small and large group homes; drug and/or alcohol rehabilitation facilities or halfway houses; nursing or personal care homes; and places of worship.

40.     Institutions for Children, the Aged or Handicapped are not permitted in any zoning district in the City of Allentown with the exception of the I-G Institutional and Government Zoning District. The purpose of the I-G Zoning District is to provide areas for major governmental and institutional uses, including hospitals, related medical offices and colleges.

41.     Section 1303 of the City's zoning code defines "family" as follows:

Family means either one of the following:

A.   Any number of individuals living together on a non-transient basis as a single housekeeping unit doing their cooking on the premises, when the individuals are related by blood, marriage, or  adoption, including any number of foster children, under the full-time care of resident parents or resident persons acting in loco parentis; or

B.   A maximum of 4 unrelated persons living together as a single housekeeping unit doing their cooking on the premises, without any additional boarders.

42.     Section 1303 of the City's zoning code defines "Group Home" as follows:

Group Home means residential clients and attendant (24 hours or less) staff, living together in a dwelling unit and functioning as a single housekeeping unit under a common housekeeping management plan based upon an intentionally structured relationship providing organization and stability. The resident clients of a Group Home must be limited to persons who need specialized housing because of age, disability or illness, and may include, but not necessarily limited to children, the mentally or physically handicapped and elderly, but shall not include drug

and alcohol rehabilitation facilities, or adult prerelease correctional facilities such as work release, halfway houses or similar uses.

A. Small Group Home has five or six resident clients. Any number of resident clients less than five is to be considered a "family."

B. Large Group Home has seven or more resident clients, up to a maximum of 12 resident clients.

43. Section 1303 of the City's zoning code defines "Halfway House" as follows:

Halfway House means a residential facility housing a maximum of 15 persons who receive therapy and counseling under the supervision and constraints of alternatives to imprisonment, such as, but not limited to, pre-release, work release, restitution, or probationary programs or a non-residential facility involving similar types of programs.

44. Section 1303 of the City's zoning code defines "Handicapped" as follows:

Handicapped means (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, and (2) a record of having such an impairment, but does not include current, illegal use of or addiction to a controlled substance as defined in Section 102 of the Controlled Substance Act (21 U.S.C. 802).

45. Section 1303 of the City's zoning code defines "Institution or Residence for Children, the Aged or the Handicapped" as follows:

Institution or Residence for Children, the Aged, or the Handicapped means a group residential facility that provides supportive services and treatment as well as residence to more than 12 unrelated persons including but not limited to children, juvenile delinquents, the mentally or physically handicapped and elderly, but not including drug and alcohol treatment or

rehabilitation facilities, or adult pre-release correctional facilities such as work release, halfway houses or similar uses.

46.    Section 1303 of the City's zoning code defines "Drug and Alcohol Rehabilitation Facility" as follows:

Drug and Alcohol Rehabilitation Facility means a facility which provides residentially based treatment and rehabilitation and/or out-patient services. The residentially based facility may include room and board, personal care, and intensive supervision and case work for no more than 30 patients. Both the residential and out-patient facilities may be included within a hospital but are not a hospital or clinic as defined in this Ordinance. The foregoing definition shall not be deemed to include a Veterans Treatment Center as defined in this Ordinance and any references in this Ordinance to a drug and alcohol rehabilitation facility shall not include any such Veterans Treatment Center.

## D.    SPECIAL USE PERMIT APPLICATION AND HEARINGS BEFORE THE ZONING HEARING BOARD

47.    AVC filed a timely appeal from the denial of its zoning application to maintain a "drug and alcohol rehabilitation facility for up to 18 clients" at 1447 Hamilton Street.

48.    AVC in its appeal specifically denied that AVC was maintaining a "drug and alcohol rehabilitation facility."  The appeal stated: "Allentown Victory Church intends to operate the Recover Victory Home which will provide a drug and alcohol free environment in a supportive recovery residence for men recovering from addiction in a family style residential setting."

49.    In the addendum to the application, AVC stated it was more akin to a "group home." In support of the group home classification, AVC provided a letter from the Director of the County of Lehigh Alcohol and Substance Abuse Services which stated "After reviewing the specific

mission of the Recovery Victory Home and how Allentown Victory Church is utilizing the property, it is apparent that this use is not a drug and alcohol facility as no treatment or treatment related services are occurring at that location." The letter also stated that any treatment services must be licensed by the Commonwealth of Pennsylvania.

50.     AVC also requested pursuant to the federal Fair Housing Act, 42 U.S.C. §3604(f)(3)(B) a reasonable accommodation for RVH to be treated as a group home, either large or small, as all of its resident are handicapped under the Fair Housing Act.

51.     AVC specifically requested consideration under Section 1307(C) of the City's zoning code, which states:

C. **Persons With Disabilities.** After the Zoning Officer receives a complete written application, the Zoning Hearing Board **shall** grant special exception approval allowing modifications to specific requirements of this Ordinance when the applicant proves to the satisfaction of the Zoning Hearing Board that (emphasis added):

1.     Such modifications are necessary to provide a "reasonable accommodation" required by the Americans With Disabilities Act and/or the Federal Fair Housing Act and/or applicable State law, as amended.

2.     Only persons who the applicant proves have "disabilities" as defined in and protected by such laws are served.

3.     The standards for such accommodation found in Section 1327 are met.

52.     Two hearing were held before the Zoning Hearing Board:  June 10, 2019 and August 26, 2019.

### E.      JUNE 10, 2019 ZONING HEARING

53.      There were nine (9) citizen and neighbors who were given objector status to AVC's special use permit application.

54.      Matthew Catricola was called as the first witness.  He is the Pastor of Allentown Victory Church and the Director of Recovery Victory Home.  He began his testimony by discussing AVC's plan for 1447 Hamilton Street to provide recovery housing in a family like setting.

55.      His testimony was interrupted by ZHB member Knauer who had concerns about the lease between AVC and Rocky & Sons, Inc., the landlord.  His sole concern was that the lease was residential.

56.      Pastor Catricola's testimony was paused so that the property manager could give testimony concerning the lease and ownership of the property.

57.      ZHB member Knauer drew attention to the fact that AVC's counsel had provided a residential lease as an exhibit, stating "Well, you've given me a residential lease. It doesn't say anything about the landlord giving permission to these people to have this kind of a facility there."

58.      Notwithstanding the presence and testimony of the property manager for 1447 Hamilton Street, ZHB member Knauer continued to question the propriety of the zoning application because the permission of the property owner was not submitted.

59.      In response to AVC counsel's statements that the tenant had a right to use the property, ZHB member Knauer stated "Not as a treatment center.  This is a residential lease here."

60.      After a discussion with ZHB member Salinger concerning the nature of the zoning request with AVC's counsel, ZHB member Knauer again returned to the issue of whether the owner had knowledge of the zoning application.

61.     Once again, the property manager stated she is representing the owner.

62.     ZHB member Unger then raised his concern that AVC did not properly advertise the zoning application because the application was for a special exception to allow a group home with a maximum of 12 residents.  ZHB member Unger's concern was that AVC wanted 18 residents which required a variance, which was not stated in the advertisement.

63.     ZHB member Unger repeatedly expressed concern whether the zoning application was properly advertised because he was taking the position that the AVC use was that of a substance abuse treatment facility.

64.     ZHB member Unger questioned whether AVC could fit the definition of a "large group home", stating "The resident clients of a group home must be limited to persons who need specialized housing because of age, disability, or illness.  And they include, but not necessarily are limited to children, mentally or physically handicapped, or the elderly.  So, if they're not being treated, then, how do they qualify to even reside in a group home?"

65.     AVC's counsel responded that the residents are disabled under the Fair Housing Act, stating: "Now, the residents must be living -- again, it says the persons who need specialized housing because of age, disability, or illness.  The disability is drug or alcohol addiction.  Drug and alcohol addiction is defined in the Federal Fair Housing Act as a disability. So the disability is that. That is why they qualify to be at a group home."

66.     ZHB member Salinger questioned how a person who is not currently using drugs could be disabled, since in his belief they were no longer addicted.

67.     Both ZHB members Unger and Knauer indicated that they believed the use was more akin to an Institution or Residence for Children, Aged, or Handicapped than a group home solely because of the number of residents.  ZHB member Unger stated that the use was not

permitted in the R-H zoning district, and once again brought up the issue of the allegedly "faulty" advertisement notice.

68.     AVC's counsel in discussing the variance standards, stated the City's zoning code had a reasonable accommodation provision. which requires the granting of a special exception: "After the zoning  officer receives a complete written application,  the zoning hearing board shall grant a special exception approval, allowing modifications to the specific requirements of the ordinance when the applicant proves to the satisfaction of the  board, that such modifications are necessary to provide a "reasonable accommodation", required by the Americans with Disabilities Act, or the Federal Fair Housing Act and/or  applicable state law."

69.     ZBH member Unger questioned whether the ZHB had to consider the reasonable accommodation request: "Certainly, you're not arguing that anyone with a disability can perform any use in any zoning district, just because they're disabled?"  AVC counsel responded: "No. It has to be a "reasonable accommodation" as that is determined by law."

70.     ZHB member Unger was unconvinced that the Board was required to make a reasonable accommodation.  He responded: "But I'm not comfortable changing uses. Because I'm convinced that if it is more than 12, it's an institutional facility that's not permitted in this zone, and even if it is for disabled individuals, clearly, the Americans with Disabilities Act doesn't change the underlying uses that are permitted. Because there are uses in the city that completely approve by right, you know, that type of addressing of –"

71.     ZHB member Salinger tried to rein in member Unger by stating "you have to let the applicant make his case."

72.     Member Unger would not be deterred.  He responded that he had a problem with the advertisement which was a variance with a special exception when it really was just a variance.

73.    A colloquy developed between members Unger and Salinger concerning the several definitions.   Member Salinger stated he didn't think the issue centered on institutionalization but a single housekeeping unit and having more than 12 residents.  Member Unger responded: "Who on earth in this day and age, resides with 18 people? That is not a housekeeping unit. You can call it whatever you want to, but it's not a housekeeping unit."

74.    AVC's counsel responded by stating that AVC was seeking a reasonable accommodation or either 18 or 15 residents.

75.    Member Knauer responded by stating: "Don't [sic] the reasonable accommodation language, doesn't that pertain to the individual, and not a property use?"  AVC counsel responded that a reasonable accommodation is intended to modify specific requirements of the ordinance, and that the request is to modify the cap of 12 residents.

76.    Member Knauer responded that it was his understanding that the Americans with Disabilities Act only applied to individuals seeking accommodations in the "job place," and would not change the use of the property.

77.    AVC's counsel responded that the accommodation for more than 12 residents was necessary to make the facility economically viable by charging each resident $130 per week.

78.    AVC's counsel reiterated that the accommodation AVC was seeking was to have more than 12 residents.   Member Knauer responded by stating: "That's a reasonable accommodation for what you want to do. It's not a reasonable accommodation as defined to my understanding, by the Americans With Disabilities Act."

79.    Member Unger stated in response to the reasonable accommodation request that there were other zoning districts in the City that permit this use.

80.     Member Salinger added: "Well, I think what troubles me is that this whole discussion about 18 [residents] is an afterthought to justify not doing the proper paperwork at the beginning. If somebody had asked and come and asked, then we wouldn't be here today. Scott [Unger] is absolutely right, that there are other places where this type of use is permitted."

81.     Member Unger expressed his skepticism for the current zoning application by stating: "I think the reason that we're being asked to consider this piece of property is a matter of convenience because it is one that is already owned by the applicant, who has already leased it to this entity." To which, Member Salinger added, "Essentially what you're asking us to do is to correct a mistake that the applicant made early on. It could have been 12, if this had been done properly."

## F.     AUGUST 26, 2019 ZONING HEARING

82.     Once again, Pastor Catricola testified.  He testified that the dwelling located at 1447 Hamilton Blvd is a 4500 square foot house, with 10 bedrooms and two (2) kitchens.

83.     At the time of the August 2019 hearing, RVH had nine (9) residents and one resident manager.

84.     He told the ZHB that the residents often cook and eat their meals together.

85.     RVH came about as the result of observations Pastor Carticola and Church members made concerning the surrounding environment.  Pastor Carticola explained, "We have, at our church, we had about 40 to 50 people from work release that we would bus in every single Sunday to our church. Through that, we really got involved in this community. We saw a lot of issues with re-entry. So, we had our buses vandalized quite some time ago here, and so we used that to look at helping solve the problem with re-entry a little bit more here in Allentown. So that's where the recovery home came about. We saw a lot of disconnect between those coming from work release

or rehabs to entering into the community. So we wanted to kind of bridge that disconnect. So we have a Christ centered home. As a Christian home, we want them to know Christ. We also want them to have really good community relationships. That is all in our purpose statement. And we want them to be able to move independently back into the community."

86.    He stated that "The purpose is to help them to understand how to live a victorious lifestyle as a Christian, but also how to enter back into the community and live independently in the community, with success."

87.    The residents come from a lot of different places. They come from substance abuse rehabilitation facilities; some were homeless. Others were released from jail or work release. There are some residents who come in off the street that acknowledge that they need help. All know that RVH offers a structured environment.

88.    Pastor Catricola described the structured program offered by RVH: "It is a 9-12 month program. The residents must pass through several levels. The first level consist of attending, we ask them to be going to four or five AA (Alcoholic Anonymous) meetings a week. Also in the first level, the residents are asked to do three Christian services a week, whether it be a church service, bible study, or prayer meeting. The residents are required to attend a house meeting every single week. They have to also meet with a sponsor once a week, and also a CRS, Certified Recovery Specialist, once a week.

89.    The residents are required to do chores for upkeep of the house. They are required to keep their rooms clean, and the public spaces clean. All residents are required to perform community service, as well: If they don't have a job yet, two hours of community service, otherwise one hour of community service per week.

90.    Pastor Catricola described the interactions of the residents as that of a family: "You know, I'm really in love with the table that we have. That 4' by 12' table.  And a lot of the guys just gather around there to eat meals together. They have meetings themselves.  Sometimes they feel like their meetings with just congregating is more beneficial than some of the NA or AA meetings they've been to. They're very tight knit. They help take each other to NA or AA meetings, introduce them. They'll walk with them. A lot of the meetings are in walking distance, so they'll walk together, three to four people, to go to some of these meetings together. They also come to church together.  Some of them come to our church. They're welcome to go to other churches, as well. Two of them go to another church in the community. They have each other's cell phones. We have group texts. And they also text each other and communicate, as well, throughout the week."

91.    He stated that to make RVH economically viable, 15 residents were required with each resident paying $135 per week.

92.    RVH does not offer medical services, nor does it provide any substance abuse counseling or treatment.

93.    ZHB Member Salinger asked Pastor Carticola if there was a single housekeeping management plan.  His reply was that the chores are divided up by the residents.

94.    Pastor Catricola told the ZHB that the greatest number of residents at RVH at any time was eleven (11).  RVH never reached its goal of 18.  This includes a house manager; however, the coverage is not 24 hours.

95.    In response to questions from Member Salinger, Pastor Carticola stated that RVH was approved by the County as an appropriate residence for persons on probation or parole.  In response to a question about re-entry for parolees, he stated that RVH uses a Certified Recovery

Specialist, NA and AA meetings, church services and Bible studies, and within the house, teaches life skills.

96.     RVH gets no state or local funding.  Nor have there been any criminal issues with the neighborhood.

97.     When the hearing was opened up for citizen questions and comments, one citizen complained that 1447 Hamilton Street, based on the number of residents and bedrooms, could not be considered a group home, but rather was an institutional use.

98.     Another neighbor opponent stated: "We're just going to grant people -- we're going to give them a hardship to turn a home into an institution in a neighborhood, so that they can experiment, in our neighborhood?"

99.     Another neighbor opponent complained that trash began piling up when the residents began hanging out on the back porch.  The neighbor stated that she complained to the City's recycling department.  Her complaint was based on a picture sent to her by someone passing by the address.

## G.     ZONING HEARING BOARD DISCUSSION AND DENIAL OF ZONING APPLICATION

100.     ZHB member Unger stated that because RVH was approved by the County and the Commonwealth to take in individuals on parole, the use was more akin to that of an institution and not that of a group home.  He also stated that the only group home definition that had as part of its definition the term "family" was a "small group home."  He concluded  RVH did not fit within that definition.

101.    Member Unger stated that because it is not a group home, it is not a permitted use in this zone.  He reiterated that it was an "institution" and that AVC did not demonstrate a hardship to use the property as an institution.

102.    Member Unger further stated: "But if we were to get into the families, I would argue that the zoning ordinance already provides relief for definition of a family. The applicant, in this case, is not an individual. It is an institutional applicant that already has accommodations from the federal government by being a not-for-profit corporation. So the accommodations themselves are not really for the end user. They're for the organization."

103.    ZHB member Unger also stated that AVC was not entitled to a reasonable accommodation by virtue of it being a not-for-profit corporation.  He elaborated: "But what they're asking for if they  apply it to -- and again, I don't think we're  ever going to get to -- this definition of a family, they're asking for a reasonable  accommodation for their not for profit corporation, which essentially -- so you need to  go out and fundraise or find more programmatic  dollars to do at the levels you want to do them. This has nothing to do with the individual.  It is not a group home as defined by the Ordinance, and because they would accept parolees it is more akin to a halfway house."

104.    ZHB member Salinger agreed with member Unger's assessment that AVC is not entitled to a reasonable accommodation because it is a corporate entity.  "It's going to be an interesting night. I agree with your interpretation about the disability argument.  It's the institution, not the clients which are receiving the benefit -- that are being read into the benefit of the disability reading."

105.    Member Unger reiterated that he believed RVH is a drug and alcohol treatment facility because its residents must attend AA or NA, notwithstanding the position of the County

that it is not. He defended this position by stating: "Their program essentially only accepting individuals with these disabilities. And they've actually by using the American with Disabilities Act, they're capitulating that these are people who are disabled by virtue of having a drug or alcohol defense."

106.    ZHB member Knauer agreed with member Unger that RVH has the hallmarks of a treatment program, however, he stated it is not a substance abuse treatment facility. He stated he was voting against the application: "So I think based on what I've heard about the program and the requirements, so many meetings, so much church attendance per week,  life coaching in house, and I think it is tending toward what is an exception to a group  home here. And, of course, it would require a variance. And I'm not seeing any legal hardship here for a variance. So, I think I would have to vote against the application because I don't think it squarely fits within the definition of a group home. It's close. But I don't think it's in it."

107.    Member Unger moved that the special exception be denied: "So my first motion is to deny the special exception because I believe that it is specifically excluded. The description of the uses, as I've heard them, I believe are specifically excluded in the definition of a use home, which would not permit this use as a special exception." It was approved by a vote of 2-1.

108.    Member Unger then made a motion to deny the variance."  "I'll make a motion to deny the request for a variance, based upon the fact that there was no testimony provided that the property cannot be used in strict conformity with the zoning ordinance; and therefore, cannot meet the hardship requirements of a variance."  The motion was approved unanimously.

**H.     THE ZONING HEARING BOARD'S WRITTEN DECISION**

109.    On September 16, 2019 the ZHB issued its formal, written decision to deny Allentown Victory Church's application for a special exception and variance in a short, six (6) page document.

110.    Among the findings of fact, the ZHB found:

a.    The proposed use advertised for the June 10, 2019 hearing was a Group Home for 18 residents. This proposal exceeded the permitted number of residential clients which is limited to 12 in number. A group home use is permitted by special exception in a high density residential district.

b.    The proposed use advertised for the August 26, 2019 hearing was an Institution or Residence For Children, The Aged, or The Handicapped for 15 residents. This proposal exceeded the permitted number of residents which is limited to 12 in number. The institutional use is not permitted in a high-density residential district.

c.    At both hearings the testimony provided that the increased number of proposed residents were needed to make the proposed uses financially feasible.

111.    The ZHB stated the basis for its decision as follows:

a.    The Board concludes that Appellant has not met its burden of proof in that no evidence was presented to indicate that there is no possibility Subject Premises can be used in strict conformance with the provisions of the Zoning Ordinance. The absence of testimony regarding failed marketing efforts by qualified professionals over extended periods of time indicating non-usability for permitted purposes bars the Board from finding unnecessary hardship.

24

b.   As to the proposed use as a Group Home, both small and large group homes are permitted as a special exception in the district where Subject Premises is located. Reference is made to Section 1313.01.A. of the Zoning Ordinance. However, the definition of Group Home specifically excludes the uses of ". . . halfway houses or similar uses".

c.   Based on the testimony of Pastor Carticola, the proposed used is more like that of a "Halfway House."

d.   Appellant initially requires of its residents attendance at Sunday church services at Allentown Victory Church, three meetings per week of bible study or prayer services, four meetings per week with a sponsor regarding its 12 Step program, one meeting for one hour per week with a certified recovery specialist and supervision in the community at large. Also, on the premises are offered AA meetings, NA meetings and C.R.S. meetings. Certainly, these requirements are for the purpose of not only supervision but counseling and therapy, the province of halfway houses.

e.   In addition, Appellant has an active relationship with county correctional facilities and probation offices and appears to recruit residents therefrom for its facility.

112.   The ZHB failed to consider, much less address the issues of the disabilities of RVH's residents and failed to render a decision as required by Section 1307.03(C) of the City zoning code, which states:

**Persons With Disabilities.** After the Zoning Officer receives a complete written application, the Zoning Hearing Board shall grant special exception approval allowing modifications to specific requirements of this Ordinance when the applicant proves to the

satisfaction of the Zoning Hearing Board that:

1.      Such modifications are necessary to provide a "reasonable accommodation" required by the Americans With Disabilities Act and/or the Federal Fair Housing Act and/or applicable State law, as amended.

2.      Only persons who the applicant proves have "disabilities" as defined in and protected by such laws are served.

3.      The standards for such accommodation found in Section 1327 are met.

## I.      THE DEFENDANTS' DISCRIMINATORY HOUSING PRACTICES

113.    The effect of Defendants' actions has been to prevent the Plaintiff from residing at the dwelling of its choice in the City of Allentown.

114.    Plaintiff is an aggrieved person as it is a housing provider for disabled persons and is  associated with disabled persons under the Fair Housing Amendments act of 1988, 42 U.S.C. Section 3602(d) and (I) who have been injured by Defendants' discriminatory conduct and have suffered damages, economic loss and a loss of civil rights as a result of the Defendants' conduct.

115.    1447 Hamilton Street is a dwelling within the meaning of section 802(b) of the Fair Housing Act, 42 U.S.C. Section 3602(b).

116.    The effect of Defendants actions is to deny needed housing opportunities to recovering alcoholics and substance abusers within the City of Allentown.

117.    The effect of the Defendants' conduct is to limit the housing opportunities of unrelated disabled persons by denying them the right to live together as a group in any residential zoning district within the City of Allentown, Pennsylvania

118.   The Defendants are treating the residents of the aforementioned dwelling in a discriminatory fashion and are utilizing their police and zoning powers as applied to this group of unrelated disabled individuals living together as a common household differently than it imposes upon individuals living together who are related by blood or marriage or other groups of unrelated disabled persons.

119.   The Defendants have acted under color of state law in failing to affirmatively further fair housing in its code enforcement activities with the purpose and effect of discriminating against Plaintiff because of their handicap or their association with provision of housing for persons with disabilities, and applying those codes so as to deny Plaintiff the residential opportunities available to persons related by blood, marriage or adoption, or other groups of similarly situated unrelated disabled persons.

120.   Plaintiff has been denied the opportunity to provide housing for recovering alcoholics and substance abusers and as a result has suffered economic damages, and other irreparable harm as a result of Defendants' actions. They have no adequate remedy at law.

121.   Plaintiff and persons associated with the Plaintiff are living in fear of losing their home and are suffering anxiety, emotional distress, pain, setbacks in their efforts at recovery, and other irreparable harm as a result of Defendant's actions. They have no adequate remedy at law.

122.   The Defendants have utilized its police powers to threaten, intimidate, harass and coerce the Plaintiff and persons associated with the Plaintiff after they have exercised their rights under the Federal Fair Housing Act.

123.   The Defendants are intentionally and maliciously harassing, intimidating and interfering with the Plaintiff and persons associated with the Plaintiff with the intent of preventing AVC from existing in a residential neighborhood.

124.    By arbitrarily and illegally describing the activities at the aforementioned dwelling as an illegal occupation of a single-family dwelling, the Defendants are making single family housing unavailable to persons recovering from drug and alcohol addiction

### JURY DEMAND

Plaintiffs hereby demand a trial by jury.

### V.    CLAIMS FOR RELIEF

### COUNT I

### FAIR HOUSING ACT

125.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 124 above.

126.    Defendants, the City of Allentown and the Zoning Hearing Board are violating Plaintiff's rights under the Fair Housing Act, 42 U.S.C. Sections 3601, et. seq., and its implementing regulations by:

a.    denying and otherwise making housing unavailable to the Plaintiff because of the disability of Plaintiff's residents;

b.    using its police powers as a pretext to exclude the Plaintiff and its residents from the housing because of their disability;

c.    interfering with the right of the Plaintiff and its disabled residents to live in the dwelling of their choice;

d.   failing to make reasonable accommodations in its zoning, and other municipal codes so as to afford the Plaintiff and its residents an equal opportunity to use and enjoy the aforementioned dwelling;

e.   enforcing an ordinance that has the effect of denying housing to persons with disabilities;

f.   discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the status of the AVC residents as persons with disabilities;

g.   retaliating against Plaintiff because of its exercise of its fair housing rights, and:

h.   making, printing or publishing, or causing to be made, printed or published a statement in connection with the sale or rental of housing that indicates a limitation, preference or discrimination on the basis of disability.

## COUNT II

## AMERICANS WITH DISABILITIES ACT

127.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 126 above.

128.   The Plaintiff, Allentown Victory Church, is associated with, and/or providing housing to people with disabilities as defined in 42 U.S.C. 12102(2).

129.   The Defendants, the City of Allentown and the Zoning Hearing Board are public entities under 42 U.S.C. 12131(1).

130.    The actions of the Defendants, to exclude AVC from residential zones, violates the rights of the Plaintiff under the Americans With Disabilities Act, 42 U.S.C. 12132 et. seq., and the regulations promulgated thereunder by:

a.   denying the individual residents of the Plaintiff who are persons with disabilities the opportunity to participate in or benefit from the supportive housing program offered by the Plaintiff;

b.   using municipal police powers and methods of administering those powers with the purpose of subjecting the Plaintiff to discrimination on the basis of the disability of the AVC residents;

c.   subjecting the Plaintiff, on the basis of the disability of its residents, to discrimination;

d.   denying the individual residents of AVC an opportunity to participate in a program in the most integrated setting appropriate to their needs;

e.   denying the Plaintiff and its residents, who are people with disabilities, an equal opportunity to participate in or benefit from services and programs equal to those of people without disabilities;

f.   utilizing municipal code enforcement services that are not equal to groups of related non-disabled persons and groups of unrelated disabled persons who are not persons with intellectual disabilities.

## COUNT III

### RLUIPA - Substantial Burden

131.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 130 above.

132.    Defendants' treatment and denial of the Allentown Victory Church's special exception and variance application constitutes the imposition or implementation of a land use regulation that imposes a substantial burden on the Allentown Victory Church's religious exercise, which burden is not in furtherance of a compelling governmental interest and/or is not the least restrictive means of furthering such interest, in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(l).

## COUNT IV

### RLUIPA - Equal Terms

133.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 132 above.

134.    Defendants' treatment of the Allentown Victory Church and its denial of its special exception and variance application constitutes the imposition or implementation of a land use regulation that treated, and continues to treat Allentown Victory Church on less than equal terms with a nonreligious assembly or institution, in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(l).

## COUNT V

### RLUIPA - Discrimination

135.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 134 above.

136.    Defendant has treated the Allentown Victory Church and its special exception and variance applications differently from other applications on the basis of religion or religious denomination, in violation of RLUIPA, 42 U.S.C. § 2000cc(b)(2).

## COUNT VI

### RLUIPA - Unreasonable Limitations

137.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 136 above.

138.    Defendants have placed unreasonable limitations on religious assemblies, institutions, and structures, including unreasonable limitations on Allentown Victory Church, through its land use regulations, in violation of RLUIPA 42 U.S.C. § 2000cc(b)(3).

### PRAYER FOR RELIEF AS TO EACH COUNT

WHEREFORE, Plaintiff requests that the Court:

a.    Enter a declaratory judgment that Defendant has illegally discriminated against the Plaintiff in violation of the FHA, ADA and RLUIPA;

b.    Provide injunctive relief restraining the City of Allentown from discriminating and enforcing the restrictions of its "Group Home" ordinance against the Plaintiff and its residents and interfering with Plaintiff's use of the 1447 Hamilton Street property as a home for recovering alcoholics and substance abusers, and/or from interfering in AVC's residents' rights to reside in the Hamilton Street property;

c.    Enter a declaratory judgment stating that AVC's use of the 1447 Hamilton Street property is consistent with classification of the premises as a single-family home and that its use

is permitted in the zoning district and require the City of Allentown to apply all zoning, safety, building, and land use codes in the same manner as it does to all other single-family homes or multifamily homes;

d.      Declare the "Institution for Children, the Aged or Handicapped" ordinance to be facially discriminatory and in violation of the FHA and ADA.

e.      Declare that AVC's use of 1447 Hamilton Street is in furtherance of its religious mission to minister to the disadvantaged and that the City's actions preventing the use for religious purposes violates RLIUPA.

f.      Award the plaintiffs any available damages under the FHA and ADA;

g.      Grant an award of reasonable costs and attorneys fees; and,

h.      Order such other relief as the Court deems just and proper.

Respectfully submitted,

/S/ Nancy Marcus Newman

_____

NANCY MARCUS NEWMAN
3406 Goshen Road
Newtown Square, PA 19073
nancymarcusnew@gmail.com
Telephone: 610-213-6303
Facsimile: 925-522-3196

/S/ Steven G. Polin

_____

STEVEN G. POLIN
3034 Tennyson Street, NW
Washington, D.C. 20015
spolin2@earthlink.net
Telephone: 202.331.5848
Facsimile: 202.331.5849
(pro hac vice application pending)

COUNSEL FOR PLAINTIFFS