**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALLENTOWN VICTORY CHURCH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: 21-3021 |
| | : | |
| CITY OF ALLENTOWN, | : | |
| PENNSYLVANIA, AND ZONING | : | |
| HEARING BOARD OF THE CITY OF | : | |
| ALLENTOWN. | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2022, upon consideration of Defendants, the City of Allentown and Zoning Hearing Board of the City of Allentown (collectively "Defendants") Motion for Summary Judgment,  Brief in Support, and Statement of Facts, as well as any response thereto, it is hereby ORDERED and DECREED that Defendants' Motion is GRANTED and Plaintiff's claims are dismissed in their entirety, with prejudice.

BY THE COURT:

_____
THE HONORABLE JOHN M. GALLAGHER

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALLENTOWN VICTORY CHURCH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: 21-3021 |
| | : | |
| CITY OF ALLENTOWN, | : | |
| PENNSYLVANIA, AND ZONING | : | |
| HEARING BOARD OF THE CITY OF | | |
| ALLENTOWN. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, CITY OF ALLENTOWN,
PENNSYLVANIA AND ZONING HEARING BOARD OF THE CITY OF ALLENTOWN**

Pursuant to Federal Rule of Civil Procedure 56, the City of Allentown and the Zoning Hearing Board of the City of Allentown (collectively "Defendants"), by and through their attorneys, MacMain, Connell, and Leinhauser, LLC, respectfully move this Honorable Court for entry of summary judgment and for the dismissal of all of Plaintiff's claims against Defendants, *with prejudice*.

The grounds of this Motion are fully set forth in the accompanying Brief in Support of Defendants' Motion, which is incorporated herein by reference as if set forth fully at length.

WHEREFORE, Defendants respectfully request that this Honorable Court grant their motion and enter judgment in their favor and against Plaintiff, with prejudice.

1

**MacMain, Connell & Leinhauser, LLC**

Dated: <u>July 8, 2022</u>        By:   <u>*/s/ David J. MacMain*</u>
David J. MacMain
Tricia M. Ambrose
Attorney I.D. No. 59320/200411
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Defendants the City of Allentown*
*and the Zoning Heard Board of the City of*
*Allentown*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALLENTOWN VICTORY CHURCH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: 21-3021 |
| | : | |
| CITY OF ALLENTOWN, | : | |
| PENNSYLVANIA, AND ZONING | : | |
| HEARING BOARD OF THE CITY OF | : | |
| ALLENTOWN. | : | |
| | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS, CITY OF ALLENTOWN, PENNSYLVANIA AND ZONING HEARING
BOARD OF THE CITY OF ALLENTOWN**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................ii, iii

I.       PROCEDURAL HISTORY AND FACTUAL BACKGROUND…...…………………..…1

II.      STATEMENT OF UNDISPUTED MATERIAL FACTS…...…………………………1

III.     STANDARD OF REVIEW………………….…………………………………………...1

IV.      QUESTIONS PRESENTED……………….…….………………………………...…2

      A.      Should Plaintiff's Claims Under the Fair Housing Act be Dismissed for Failure to Establish That the Request for Accommodation was Reasonable and Necessary? …………………………………………………………………………….2

      B.      Should Plaintiff's Claims Under the Americans with Disabilities Act be Dismissed for Failure to Establish Resident Disability as a Factor in the Zoning Decision ? …………………………………………………….........................................2

      C.      Should Plaintiff's Claims Under the Religious Land Use and Institutionalized Persona Act be Dismissed for Failure to Establish a Substantial Burden on Religious exercise? ................................................................................2

V.       Argument…………………………….……………………………………...…..2

      A.      Pennsylvania Zoning Law…………………………………………….......2

      B.      Plaintiff's Claims Fail as a Matter of Law Under the Fair Housing Act…………5

      C.      Plaintiff's Claims Under the Americans with Disabilities Act Fail as a Matter of Law…………………………........................................................10

      D.      Plaintiff's Violation of the Religious Land Use and Institutionalized Person Act Claim Fails as a Matter of Law …………….........................................................11

VI.      Conclusion ......................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399 (3d Cir. 2005)……………..…10

*Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 547 Pa. 163, 167, 689 A.2d 225, 227 (1997)……………………………………………………………....3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)……………………………………1

*Baird v. Rose*, 192 F.3d 462, 467-69 (4th Cir. 1999)……………………………………………10

*Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995)……………………………………………7,8

*Bryant Woods Inn v. Howard County*, 124 F.3d 597 (4t Cir. 1997)……………………………8,9

*Castle Hills First Baptist Church v. City of Castle Hills*, 2004 WL 546792, at *11 (W.D. Tex. Mar. 17, 2004)……………………………………………………………………………………15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)…………………………………………...2

*Church of Universal Love & Music v. Fayette County*, 2008 U.S. Dist. LEXIS 65564 (W.D. Pa. 2008)……………………………………………………………………………………………..13

*City of Hope v. Sadsbury Twp. Zoning Hearing Bd.*, 890 A.2d 1137, 1149 (Cmwlth Ct. 2006)………………………………………………………………………………………14,15

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)……..15

*Community Services, Inc. v. Wind Gap Municipal Authority*, 421 F.3d 170, 184, n. 12 (3d Cir. 2005)………………………………………………………………………………………………6

*Green v. City of Philadelphia*, 266 A.2d 495 (2021)…………………………………………...3

*Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007)……………………………………………………………………………………3

*Hernandez v. Borough of Palisades Park Police Dep't*, 2003 U.S. App. LEXIS 1638 *1, *6-*7 (3d Cir. January 29, 2003)………………………………………………………………………...2

*Kennedy House, Inc. v. Phila. Comm'n on Hum. Rels.*, 143 A.3d 476 (Pa. Cmwlth. 2016)……...7

*Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment*, 284 F.3d 442, 457 (3d Cir. 2002)………6,7

*Ludwig v. Zoning Hearing Bd. of Earl Twp.*, 658 A.2d 836, 838 (Pa. Cmwlth. 1995)…………..3

*McKivitz v. Township of Stowe*, 769 F.Supp. 2d 803 (W.D.Pa. 2010)……………………………7

*Monroe Land Invs. v. Zoning Bd. of Adjustment,* 2018 Pa. Commw. LEXIS 97 (Pa.Cmwlth 2018) ……………………………………………………………………………………………4

*Murphy v. Zoning Comm'n of Town of New Milford*, 148 F. Supp. 2d 173, 184 (D. Conn. 2001)

…………………………………………………………………………………………12

*Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020)……………..1

*ReMed Recovery Care Ctrs. v. Twp. of Willistown, Chester Cnty., Pa.*, 36 F. Supp. 2d 676, 683 (E.D. Pa. 1999)………………………………………………………………………7

*Second Baptist Church v. Gilpin Twp.*, 118 F. App'x 615 (3d Cir. 2004)………………………12

*Shamah v. Hellam Twp. Zoning Hearing Board*, 167 Pa.Cmwlth 610, 648 A.2d 1299, 1304 (1994)……………………………………………………………………………………...4

*Smith v. Zoning Hearing Bd. of Huntington Borough*, 734 A.2d 55, 57 (Pa. Cmwlth. 1999), *pet. for allowance of appeal denied*, 561 Pa. 664, 747 A.2d 904 (1999)……………………………12

*State ex rel. Bruskewitz v. City of Madison*, 2001 WI App 233, 248 Wis. 2d 297, 635 N.W.2d 797, 804 (Wis. 2001)………………………………………………………………………...7

*Thornton v. City of Allegan*, 863 F.Supp. 504, 510 (W.D.Mich. 1993)………………………….7

**Statutes**

42 USCS § 2000cc(a)………………………………………………………………………17

42 USCS § 2000cc(a)(1)……………………………………………………………………12

42 U.S.C. § 2000cc-5(7)……………………………………………………………………13

42 U.S.C. § 3604(f)(3)(B)…………………………………………………………………6,7

42 U.S.C. § 3615……………………………………………………………………………..6

53 P.S. § 10910.2…………………………………………………………………………….3

42 U.S.C. § 12132…………………………………………………………………………..10

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Allentown Victory Church's  ("Church" or "Plaintiff") claims arise from a zoning application in April of 2019 to operate the Recovery Victory ("Home") to provide a recovery program for men who are overcoming drug and alcohol addiction and recently released from incarceration.  The Zoning Hearing Board of Allentown ("City" or "Defendant") denied the Church's application and the Church appealed.  Two (2) hearings were held before the Board and ultimately the Board denied the Church's request to operate the Home at a capacity of eighteen (18) residents.

The Church filed its Complaint in this matter alleging violations of the Fair Housing Act, Americans with Disabilities Act and the Religious Land Use and Institutionalized Persons Act. *See,* Doc. No. 1.   Fact discovery closed on June 24, 2022 and this matter is now ripe for summary judgment. *See,* Doc. No. 29.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

A Statement of the Undisputed Material Facts is attached hereto as required by Local Rule 56.1 governing motions for Summary Judgment and the Court's Policies and Procedures and is wholly incorporated herein by reference.

## III.    STANDARD OF REVIEW

Summary judgment should be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

(quoting *Anderson*, 477 U.S. at 248). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

"[I]t is proper for a district court to grant summary judgment when a plaintiff fails to produce any evidence on a necessary element of her claim." *Hernandez v. Borough of Palisades Park Police Dep't*, 2003 U.S. App. LEXIS 1638 *1, *6-*7 (3d Cir. January 29, 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)).

## IV.   STATEMENT OF QUESTIONS INVOLVED

1.   **Should Plaintiff's claims under the Fair Housing Act be dismissed as Plaintiff has failed to establish that their request for an accommodation to increase the residents of the Home was reasonable and necessary?**

    **Suggested Answer:   YES**

2.   **Should Plaintiff's claims under the Americans with Disabilities Act be dismissed as Plaintiff has failed to establish that disability of the residents was a motivating factor behind the zoning decision?**

    **Suggested Answer :   YES**

3.   **Should Plaintiff's claims under the Religious Land Use and Institutionalized Persons Act be dismissed as Plaintiff failed to establish that the zoning decision resulted a substantial burden on Plaintiff's religious exercise?**

    **Suggested Answer:   YES.**

## V.   ARGUMENT

### A.   Pennsylvania Zoning Law

A zoning hearing board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance. 'Zoning hearing boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the

2

zoning ordinance in accordance with the applicable law.' Thus, the zoning hearing board is required to apply the terms of the zoning ordinance as written rather than deviating from those terms based on an unexpressed policy. *Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007); (quoting *Ludwig v. Zoning Hearing Bd. of Earl Twp.*, 658 A.2d 836, 838 (Pa. Cmwlth. 1995)).

A variance is a request to waive or alter the terms of the zoning ordinance for a specific proposed use. An application for a variance seeks permission to do something which is prohibited by the zoning ordinance. *Green v. City of Philadelphia*, 266 A.2d 495 (2021). The Code allows an applicant to seek relief from the requirements of the zoning ordinance by filing an application for a variance with the City of Allentown Zoning Hearing Board.

The Municipal Planning Code requires an applicant seeking a variance to show (1) that there are unique physical conditions peculiar to the property and that the unnecessary hardship is due to those conditions; (2) that because of the physical conditions, there is no possibility that the property can be developed in strict conformity with the zoning ordinance and that a variance is needed to enable reasonable use of the property; (3) that unnecessary hardship has not been created by the applicant; (4) that the variance is not detrimental to the public welfare; and (5) that the variance is the minimum variance that will afford relief and is the least modification of the regulation at issue. *53 P.S. § 10910.2.* Unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance. *Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 547 Pa. 163, 167, 689 A.2d 225, 227 (1997).

3

It is the duty of the zoning board in the exercise of its discretionary power to determine whether a party has met its burden of proof.  *Shamah v. Hellam Twp. Zoning Hearing Board*, 167 Pa.Cmwlth 610, 648 A.2d 1299, 1304 (1994).  The initial burden of proof and persuasion is "on the applicant to prove that the proposed use meets all of the Zoning Code's criteria and conditions applicable to the proposed use."  *Monroe Land Invs. v. Zoning Bd. of Adjustment,* 2018 Pa. Commw. LEXIS 97 (Pa.Cmwlth 2018).

Here, the Church sought a variance to operate the Home over the capacity as established by the Zoning Code.  Initially, the Church applied to operate a Group Home, with the increase in capacity from twelve (12), which permitted by the Code, to eighteen (18) residents, which requires a variance.  The Church then applied to operate an Institution For the Children, Aged or Handicapped with eighteen (18) residents - which is only permitted by variance in an R-H district and can have no more than twelve (12) residents.

Pursuant to the Code at § 1307.03(A), The Board <u>may</u> grant a variance, provided that all the following findings are made where relevant in a given case:

> a)  That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the Zoning Ordinance in the neighborhood or district in which the property is located;

> b) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

> c) That such unnecessary hardship has not been created by the appellant;

> d) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or

permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

e) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Here, the Board determined, after hearing all the evidence that the Church failed to establish that the Home could not operate in strict conformity with the provisions of the Zoning Ordinance. *See*, the Decision of the Hearing Board (JA 000097-000099). In fact, the Home could operate in conformity with the Code provided that the Church kept the number of residents within the requirements of the Code. Further, any hardship was created by the Church. *See*, D.T. of Board Member Salinger (JA 00120); *See*, D.T. Board Member Unger (JA 00232)

## B. Plaintiff's Claims Fail as a Matter of Law under the Fair Housing Act

Plaintiff avers in pertinent part, that the decision of the Board in denying the variance violated the Fair Housing Act ("FHA") by denying housing to the Church because of the disability of the residents, using its police powers as a pretext for excluding Plaintiff from housing because of the disability of the residents, interfering with the Plaintiff's ability to operate the Home in the dwelling of Plaintiff's choice, failing to make a reasonable accommodation in the zoning code to afford the Plaintiff to use the property, enforcing an ordinance that denies housing to people with disabilities, discriminating in the terms, conditions and provisions of rental of a dwelling because of the disability of the residents, retaliating against Plaintiff because of its exercise of its fair housing rights and publishing a statement in connection with the rental of housing that indicates discrimination based on disability.[1]

---

[1] The Church has failed to set forth any evidence to support their claims that the City retaliated against the Church because it appealed the decision and invoked its rights under the FHA and that the City published a statement in connection with the rental of housing that indicates discrimination based on disability.

The FHA prohibits housing discrimination on the basis of race, color, religion, sex, disability, familial status, and national origin. Its coverage includes private housing, housing that receives Federal financial assistance, and State and local government housing. The FHA states that among other things, it is unlawful to discriminate in zoning practices.  The FHA requires that reasonable exceptions in policies and operations to afford people with disabilities equal housing opportunities.

The FHA's preemption provision, which is codified at *42 U.S.C. § 3615*, provides that "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under [the FHA] shall to that extent be invalid."  *42 U.S.C. § 3615.*

 Under the FHA, "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling," constitutes illicit "discrimination" *42 U.S.C. § 3604(f)(3)(B).* Consequently, an accommodation is statutorily required when it is both *reasonable* and *necessary* to provide handicapped individuals with an *equal* opportunity to use and enjoy housing. *Community Services, Inc. v. Wind Gap Municipal Authority*, 421 F.3d 170, 184, n. 12 (3d Cir. 2005)(emphasis added).

In *Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment*, 284 F.3d 442, 457 (3d Cir. 2002), the Court of Appeals clarified that when a claim is brought pursuant to § 3604(f)(3)(B), "the plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable." A plaintiff proceeding under *§ 3604(f)(3)(B)* must establish a nexus between "the reasonable

accommodations that he or she is requesting" and "their necessity for providing handicapped individuals [with] an 'equal opportunity' to use and enjoy housing." *Id* at 459.

The FHA does not provide handicapped individuals with the prerogative to live in a particular home of his or her choosing, regardless of the applicable zoning regulations. *McKivitz v. Township of Stowe*, 769 F.Supp. 2d 803 (W.D.Pa. 2010). If such requirement were made, it ""would give handicapped persons carte blanche to determine where and how they would live regardless of zoning ordinances to the contrary." *Thornton v. City of Allegan*, 863 F.Supp. 504, 510 (W.D.Mich. 1993).

There are three ways to show discrimination under the FHA: (1) intentional discrimination; (2) discriminatory impact; and (3) refusal to make a reasonable accommodation." *State ex rel. Bruskewitz v. City of Madison*, 2001 WI App 233, 248 Wis. 2d 297, 635 N.W.2d 797, 804 (Wis. 2001). The FHAA . . . places upon a municipality an 'affirmative duty' to make reasonable accommodations. *ReMed Recovery Care Ctrs. v. Twp. of Willistown, Chester Cnty., Pa.*, 36 F. Supp. 2d 676, 683 (E.D. Pa. 1999). The FHA[A] does not require accommodations that increase a benefit to a handicapped person above that provided to a nonhandicapped person with respect to matters unrelated to the handicap. *See 42 U.S.C. § 3604(f)(3)(B)*. Lastly, if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be "necessary." *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995). The [FHAA's] necessity element requires that an accommodation be essential, not just preferable. *Kennedy House, Inc. v. Phila. Comm'n on Hum. Rels.*, 143 A.3d 476 (Pa. Cmwlth. 2016). "For example, even though a prohibition of pets in apartments is common, facially neutral, and indeed reasonable, the FHA requires a relaxation of it to accommodate a hearing dog for a deaf person because such an accommodation does not unduly burden or

fundamentally alter the nature of the apartment complex." *Bryant Woods Inn v. Howard County*, 124 F.3d 597 (4t Cir. 1997) *citing Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995).

In *Bryant Woods*, the plaintiff sought a permit to increase its nursing home capacity from eight (8) to fifteen (15). The zoning board denied the permit and plaintiff filed a suit alleging discrimination under the FHA. The District Court granted summary judgment and held that the proposed expansion was not reasonable and necessary to afford handicapped persons equal opportunity to use and enjoy housing. The 4th Circuit upheld summary judgment.

*Bryant Woods* is almost directly on point with the present case. *Bryant Woods* is a nonprofit group home that rents to elderly persons with dementia, Alzheimer's and other disabilities. Plaintiff's use of the home for eight (8) residents was permitted. However, Plaintiff sought a variance to operate a group care facility with fifteen (15) residents. The 4th Circuit held that the "the zoning variance that Bryant Woods Inn seeks is not aimed at permitting handicapped persons to live in group homes in residential communities -- that, as we have noted, is already permitted -- but at *expanding* its group home size from 8 to 15 persons." *Id* at 606. Further, the 4th Circuit held that the plaintiff did not provide anything of record that having fifteen (15) residents, instead of eight (8) is necessary to accommodate individuals with handicaps. The 4th Circuit also held that if they were to accept plaintiff's position – then anyone could construct or try to use any type of housing on the rationale that the proposed residents have handicaps. *Id* at 606. Lastly, plaintiff's only evidence of the advantage of the proposed expansion was that it would financially assist the plaintiff, which was "necessary" under the FHA and does not provide an equal opportunity to the residents, but a financial advantage to the plaintiff.

The Church has failed to establish how the accommodation to increase the number of residents to eighteen (18) is reasonable and necessary and to afford all handicapped persons equal opportunity to use and enjoy housing.   Like the proceedings before the Zoning Hearing Board, no evidence has been presented that the increase in the capacity of the Home was reasonable and necessary.  *See*, D.T. Board Member Unger (JA 00233).

Initially, Pastor Catricola testified that there were other locations that he considered prior to renting 1447 Hamilton Street but while those locations that were acceptable, they did not have the specific requirements he wanted to operate the Home.  *See*, D.T. Pastor Catricola (JA 00184). In short, Pastor Catricola acknowledged that despite being able to operate the Home at a location that complied with the zoning regulations, he wanted a particular type of home of his choosing, regardless of those applicable regulations.  Such preferences do not give rise to an FHA claim.

Further, like *Bryant Woods*, the City's decision to deny the variance does not prohibit handicapped persons an equal opportunity to use and enjoy a dwelling and it certainly does not provide a direct amelioration of the disability's effect.    Here, the City zoning regulations do not prohibit group housing for individuals with handicaps, instead the regulations permit such group housing.  Here, the Church could operate the Home pursuant to the Code via a special exception and limited the residents to that required by the Code.  A male who is in recovery for drug and alcohol addiction and looking for group housing in a program like the Home can live at the Home under the existing zoning regulations.  *See*, D.T. of Board Member Salinger (JA 00120).; *See*, D.T. Board Member Unger (JA 00231).  Further, halfway houses and group homes are permitted in the R-H zoning district – and other districts- by special exception.  *See* the City of Allentown Zoning Ordinance (JA000 369, 382).

Therefore, Church has not established that the City's denial of the variance to operate the Home with eighteen (18) residents was a violation of the Fair Housing Act and the Church's Complaint must be dismissed.

### C.  Plaintiff's Claims Under the American with Disabilities Act Fail as a Matter of Law

Pursuant to Title II, "no qualified individual with a disability shall, *by reason of* such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis supplied).

State and local governments are required to make reasonable modifications to policies, practices, and procedures where necessary to avoid discrimination, unless they can demonstrate that doing so would fundamentally alter the nature of the service, program, or activity being provided.  The term "qualified individual with a disability" is defined, in relevant part, as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* §§ 12131(2).

Courts have also found that medical facilities, such as hospitals and methadone clinics, have standing to assert a claim under the ADA over the denial of zoning permits if they care for individuals who have disabilities.  *Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399 (3d Cir. 2005).  In order to establish disability discrimination in violation of the ADA, a plaintiff must prove that: (1) he is a qualified individual with a disability; (2) he is otherwise qualified for the benefit in question; and (3) discrimination due to his disability was a motivating factor in his exclusion from the benefit. *Baird v. Rose*, 192 F.3d 462, 467-69 (4th Cir.

10

1999) (emphasizing that a plaintiff must demonstrate that disability was a motivating cause, although not necessarily the sole cause, of discrimination).

Here, the Church has not established that the City's decision to deny the variance to operate the Home and variance to increase the number of residents, was motivated by unjustified consideration of the fact that the residents were recovering drug and alcohol users. There has been no evidence from the Church that the City denied the variance because the intent of the Home was to house recovering alcoholics and drug users.  In fact, the initial application was denied because there is another Drug and Alcohol Rehabilitation center within one thousand (1,000) feet of the property.  *See*, Zoning application with denial attached (JA 000032-000033). Clearly the City does not discriminate against disabled persons, specifically persons who are recovering drug and alcohol addicts, with equal opportunity to housing if there is a rehabilitation center within 1,000 feet of the Home.

Further, the Church has not provided any evidence to establish how the City uses and applies code enforcement services unequally to unrelated to disabled persons.

As such, the City did not discriminate based on disability when it denied the Church's variance to operate the Home over the capacity as required in the Zoning Code and therefore, have not violated the ADA.  As such, the Church's claims as to violations of the ADA must be dismissed.

### D.  Plaintiff's Violation of the Religious Land Use and Institutionalized Person Act Claim Fails as a Matter of Law

The Church avers that the denial of the variance application violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by placing a substantial burden on the Church's religious exercise, treating the Church differently than non-religious entities or institutions and by placing unreasonable limitations on the Church.   Plaintiff has wholly failed to

11

establish any evidence that the City has treated the Church differently than non-religious institutions, discriminated against the Church or placed unreasonable limitations on the Church. Further, there has been no evidence that the zoning decision by the City resulted in a substantial burden on the Church's religious exercise.

### 1. The Zoning Decision Did Not Place a Substantial Burden on the Church's Religious Exercise

RLUIPA prohibits state action that would substantially burden religious land use without a compelling reason to do so in order to prevent discrimination against religious groups. Specifically, § (a)(1) mandates:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.

*42 USCS § 2000cc(a)(1).*

Land use regulation" encompasses "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land." The Third Circuit Court of Appeals has interpreted this definition narrowly, concluding that a land use regulation must either be a zoning law, a landmarking law, or the implementation of a zoning or landmarking law. *Second Baptist Church v. Gilpin Twp.*, 118 F. App'x 615 (3d Cir. 2004).

A zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference. *Smith v. Zoning Hearing Bd. of Huntington Borough*, 734 A.2d 55, 57 (Pa. Cmwlth. 1999), *pet. for allowance of appeal denied*, 561 Pa. 664, 747 A.2d 904 (1999). Further, RLUIPA "does not provide religious institutions with immunity from land use regulation." *Murphy v. Zoning Comm'n of Town of New Milford*, 148 F. Supp. 2d 173, 184 (D. Conn. 2001).

12

### a. The Church's Use of the Property Does Not Amount to a Religious Exercise

For a claimant to prevail on its RLUIPA claim, it must show that its use of the property amounts to "religious exercise." Under RLUIPA, "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." *42 U.S.C. § 2000cc-5(7)(B)*.

Religious exercise involves not only a belief and profession but a performance of physical acts such as assembling with others for a worship service. In *Church of Universal Love & Music v. Fayette County*, 2008 U.S. Dist. LEXIS 65564 (W.D. Pa. 2008), the Court held that RLUIPA defines "religious exercise" to encompass "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," including "the use, building, or conversion of real property for the purpose of religious exercise." *42 U.S.C. § 2000cc-5(7)*.

In *Church of Universal Love*, the plaintiff sought a special exception variance to allow plaintiff to hold religious services and events, including music events, on his large farm land that was initially zoned for agricultural purposes.  The defendant denied the variance and the plaintiff sued under RLUIPA.  The Court held that the plaintiff's use of the property was protected under RLUIPA for exercise of their religious beliefs – holding music events that were related to the exercise of their religion.

Here, in 2019, the Church had a separate physical location at 1901 S. 12th Street Allentown, PA.  The Church did not seek to use the property for the Home as part of its "religious exercise".  As per the Notice of Appeal filed by the Church in the zoning case, "Allentown Victory Church intends to operate the Recover Victory Home which will provide a drug and alcohol-free environment in a supportive recovery residence for men recovering from

13

addiction in a family style residential setting.".  *See*, the Notice of Appeal (JA 000036).   Further, in the documents attached to the Appeal of the denial of the decision, the Church provided the requirements for the men living in the Home.  The only religious aspect affiliated with the Home, is that the residents must attend three (3) approved Bible Studies/Church Services/Prayer Meetings a week, however, they can be affiliated with any church or religion.  *See*, the transcript of the August 26 hearing at pages 9-10 attached to the City's Answer to the Complaint (JA 000066-000067). *See*, the Recovery Home Pamphlet Brochure (JA 000003-000033). It is only for the first thirty (30) days in the program that the residents are required to attend the Sunday Services at the Church's physical location, which was a sperate location than the Home. *See*, the Recovery Home Pamphlet Brochure (JA 000003-00005). In 2019, three (3) bible study or prayer meetings per week were held at the Home, however, the residents were not required to attend those, as per the program, they could attend religious services t off site.   Further, the majority of the requirements of the residents of the Home are unrelated to the Church's "religious exercise", but focused on remaining free of drugs and alcohol, complying with probation requirements, obtaining employment and participating in therapy or recovery sessions.

Therefore, use of the Home here does not amount to "religious exercise" and the City did not prohibit the Church from exercising their religion in denying the special exception/variance to operate the Home.

### b.   The Decision by the City did not Constitute a Substantial Burden on Plaintiff's Religious Exercise

Even assuming, *arguendo*, that the operation of the Home does amount to a religious exercise, the decision of the City in denying the variance did not impose a "substantial burden" on the Church's religious exercise.

To constitute a "substantial burden" on religious exercise, the government action must be more than a "mere inconvenience or incidental effect," and induce the "forgoing or modifying of the practice of one's religion." *City of Hope v. Sadsbury Twp. Zoning Hearing Bd.*, 890 A.2d 1137, 1149 (Cmwlth Ct. 2006).

In *City of Hope*, the plaintiff purchased land for the construction of a non-denominational ministry campus and wanted to also use the land to operate a campground and hiking trails on the property as part of the ministry campus. The zoning code where the plaintiff bought the property allowed for churches and building facilities "incidental thereto to the use of the structure". The zoning board did not allow the plaintiff to erect a campground and hiking trails as per the zoning code as they are not incidental to the customary use of the church. The Court held that the "denial of the church's application for use of the campground and hiking trails as an accessory use does not impose a "substantial burden" on the church's exercise of religion, because neither the church nor its visitors will be required to forego or modify the exercise of their religion." *Id* at 1150. In short, the court found that the church can still conduct its religious exercise without trails and a campground.

A substantial burden is one that "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). In *Civil Liberties*, the Court stated that "in the context of RLUIPA's broad definition of religious exercise, a land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise--including the use of real property for the purpose thereof within the regulated jurisdiction generally--effectively impracticable." *Id* at 762.

15

Further claims of "financial cost and inconvenience as well as the frustration of not getting what one wants" are not a substantial burden on religious exercise. *Castle Hills First Baptist Church v. City of Castle Hills*, 2004 WL 546792, at *11 (W.D. Tex. Mar. 17, 2004). In *Castle Hills*, the plaintiff sought to increase its parking lot size in order to recruit new members. The court in upholding the denial of the special exception, determined that the parking situation was adequate for the size of the church, and the ability to recruit new members in order to increase membership and income was not sufficient to establish a "substantial burden".

Here, denial of the variance did not place a substantial burden on the Church's practice of its religion. The documents submitted by the Church as to operation of the Home establishes that any religious exercise affiliated with the Home in 2019 occurred, not at the Home, but at the Church's off-site location or other religious institutions of the resident's choosing. The denial of the variance did not forgo or modify the practice of religion as the Church was still able to operate. In addition, denial of the variance did not render religious exercise effectively impracticable for the Church, its members or the residents of the Home. In fact, the Church's religious practices and activities in 2019 occurred at their location on 12th Street, not at the Home. In addition, it is only for the first month of the program that the residents were required to attend services at the Church's physical location. Once a resident completes one (1) month at the Home, they are allowed to attend any religious services of their choice at any religious institution.

In addition, the City's denial of the variance had no impact on the Church's members. The Church has not submitted any evidence that the zoning decision prohibited its members from attending Church services or other religious practices affiliated with the Church. Instead, the Church continued to operate as it had since 2010.

16

Lastly, the Church admittedly is seeking the variance so that it can increase the capacity of the Home to make it financially beneficial for the Church.  A negative impact on financial viability of the Church  is not a legitimate substantial burden under RLUIPA.

Because the actions of the City in denying the variance do not constitute a substantial burden on the practice of religious exercise, the Church has not asserted a viable claim under the RLUIPA, and the Church's Complaint must be dismissed.

### 2.   The City Did Not Discriminate Against the Church by Treating the Church Differently than Non-Religious Institutions or Implement <u>Unequal Land Use Terms</u>

Pursuant to 42 USCS § 2000cc(a);

(1)   Equal terms. No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

(2) Nondiscrimination. No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

There is no evidence whatsoever that the City implemented land use terms unequally to religious institutions versus non-religious entities or institutions.  The Church has not submitted any evidence to establish that similar variances were granted to non-religious institutions in similar situations.

Further, the Church has not submitted any evidence that the City's decision as to the variance was discriminatory based on the Church's religious affiliation or denomination.   In fact, the testimony was that there was really no discussion at all at the hearing about religion or the denomination of the Church.  *See*, D.T. of Board Member Salinger (JA 000125).  The undisputed testimony was that the fact that the entity seeking the variance – the Church - was religion based did not factor into the decision.  *See*, D.T. of Board Member Knauer (JA 00292).

Because the actions of the City in denying the variance did not discriminate against the Church by treating the Church differently than non-religious institutions or implement unequal land use terms, the Church has not asserted a viable claim under RLUIPA, and the Church's Complaint must be dismissed.

## V.  <u>CONCLUSION</u>

Therefore, Defendants, City of Allentown, Pennsylvania and the Zoning Hearing Board of the City of Allentown respectfully request that this Honorable Court dismiss the Plaintiff's Complaint as the decision of the Zoning Hearing Board in denying the variance for the property did not violate the Religious Land Use Institutional Persons Act, the Americans with Disabilities Act and the Fair Housing Act.

**MacMain, Connell & Leinhauser, LLC**

Dated: <u>July 8, 2022</u>        By:   */s/ David J. MacMain*
                                  David J. MacMain
                                  Tricia M. Ambrose
                                  Attorney I.D. No. 59320/200411
                                  433 W. Market Street, Suite 200
                                  West Chester, PA 19382
                                  *Attorneys for Defendants the City of Allentown*
                                  *and the Zoning Heard Board of the City of*
                                  *Allentown*

18

## <u>CERTIFICATE OF SERVICE</u>

I, David J. MacMain, Esquire, hereby certify that on this 8th day of July 2022, a copy of

the foregoing was served upon the following via ECF Notification:


Nancy Marcus Newman, Esquire
3406 Goshen Road
Newtown Square, PA 19073
*Attorney for Plaintiff*

Steven G. Polin
3034 Tennyson Street, NW
Washington, DC 20015
*Attorney for Plaintiff*


**MacMAIN, CONNELL & LEINHAUSER, LLC**

By:  */s/ David J. MacMain*
David J. MacMain
Tricia M. Ambrose
Attorney I.D. Nos. 59320/200411
MacMain, Connell & Leinhauser, LLC
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorney for Defendants, City of Allentown and Zoning Hearing Board of the City of Allentown*

19